**CARMEN A. TRUTANICH**, City Attorney - **SBN 86629x**
**GARY G. GEUSS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney
**SUREKHA A. PESSIS**, Deputy City Attorney - **SBN 193206**
Email: Surekha.Pessis@lacity.org
200 North Main Street
6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7036, Fax No.: (213) 978-8785

*Attorneys for Defendants*, **CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, JASON STANLEY, KEVIN HAWN, BRANDON KEIFER, and ANTHONY KELLER**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CURZI,<br><br>*Plaintiff,*<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipality, LOS ANGELES POLICE DEPARTMENT, a public entity; OFFICER BRANDON KEIFER (Serial No. 37641) an individual; OFFICER JASON STANLEY (Serial No. 37097), an individual; OFFICER KEVIN HAWN (Serial No. 3672)an individual; OFFICER ANTHONY KELLER (Serial No. 31737) and POLICE OFFICERS DOES 3 through 25, and DOES 26-50, Inclusive,<br><br>*Defendants.* | CASE NO.: **CV 08-01373 PLA**<br>*Mag. Paul L. Abrams, Ctrm. G, 9th Fl.*<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW (LOCAL RULE 16-4)**<br><br>P.T.C.:        January 4, 2011<br>Time:         10:00 a.m.<br>Place:         Ctrm. "G"<br>Judge:        Mag. Paul L. Abrams<br><br>Trial Date:  January 25, 2011 |

**TO THIS HONORABLE COURT AND PLAINTIFF AND HER ATTORNEYS OF RECORD:**

Pursuant to Local Rule 16-4, Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, JASON STANLEY, KEVIN HAWN, BRANDON KEIFER, and ANTHONY KELLER (hereinafter "Defendants") hereby submit the

1

1   following Memorandum of Contentions of Fact and Law for the Pretrial Conference set

2   for January 4, 2011 at 10:00 a.m. in Ctrm. "G" of the above captioned court.  Trial is

3   currently scheduled to begin on January 25, 2011.

4

5   DATED: December 20, 2010   **CARMEN A. TRUTANICH,** City Attorney
                                **GARY G. GEUSS,** Chief Assistant City Attorney
6                               **CORY M. BRENTE,** Assistant City Attorney

7

8                               By_____/S/_____
                                    **SUREKHA A. PESSIS,** Deputy City Attorney
9
                                *Attorneys for Defendants,* **CITY OF LOS ANGELES,**
10                              **LOS ANGELES POLICE DEPARTMENT, JASON**
                                **STANLEY, KEVIN HAWN, BRANDON KEIFER,**
11                              **and ANTHONY KELLER**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES      iv

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . 1

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   LEGAL CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    42 U.S.C. Section 1983 . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Terry Stop/Reasonable Suspicion . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Probable Cause to Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      D.    Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           1.    Elements of Qualified Immunity . . . . . . . . . . . . . . . . . . 8

      E.    Failure to Intervene to Prevent Violation of Civil Rights . . . . . . . . . . . 9

      F.    Plaintiff's *Monell* Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      G.    The Assault and Battery Claims Also Fail . . . . . . . . . . . . . . . . . . . 12

      H.    False Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      I.    Intentional Infliction of Emotional Distress . . . . . . . . . . . . . . . . . . 14

           1.    Plaintiff's Burden of Proof . . . . . . . . . . . . . . . . . . . . 14

           2.    *Government Code* Sections 815.2 and 821.6 . . . . . . . . . . . . . . 15

      J.    Defendants Did Not Violate Plaintiff's Civil Rights Under California Civil Code § 52.1(a) . . . . . . . . . . . . . . . . . . . . . . . . 17

      K.    Negligent Hiring, Training and Supervision . . . . . . . . . . . . . . . . . . 18

      L.    Defendants are Not Liable for Punitive Damages . . . . . . . . . . . . . . . 20

IV.   EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.    TRIFURCATION OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.   JURY TRIAL AND ATTORNEY FEES . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  ABANDONMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VIII. OTHER MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

iii

1

IX.    DEFENDANTS' WITNESS LIST ............................... 22

XI.    DEFENDANTS' EXHIBIT LIST ............................... 22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**                  **Page**

*Allen v. City of Portland*
   73 F.3d 232, 235 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Amylou R. v. County of Riverside*
   28 Cal.App.4th 1205, 1208-14, 34 Cal.Rptr.2d 319 (1994) . . . . . . . . . . . . . . 16

*Anderson v. Creighton*
   483 U.S. 635, 97 L.Ed.2d 523, 107 S. Ct. 3034 (1987) . . . . . . . . . . . . . . . . . . . . 8

*Arnold v. International Business Machines Corporation*
   637 F.2d 1350; 1355-58 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Baker v. McCollan*
   443 U.S. 137, 144, 146, 61 L.Ed.2d 433, 99 S.Ct. 2689 (1979) . . . . . . . . . . . . 4

*Barry v. Fowler*
   902 F.2d 770, 772 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Beck v. Ohio*
   379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964) . . . . . . . . . . . . . . . . . . 6

*Biltgen v. City of San Mateo*
   127 Cal.App.2d 474-75, 274 P.2d 21 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Blair v. City of Pomona*
   223 F.3d 1074 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Board of the County Comm'rs of Bryan County, Okla. v. Brown*
   520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brower v. County of Inyo*
   489 U.S. 593, 599, 103 L.Ed.2d 628, 109 S.Ct. 1378 (1989) . . . . . . . . . . . . . 4, 5

*City of Canton of Ohio v. Harris*
   489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of St. Louis v. Praprotnik*
   485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Coleman v. Kaye*
   87 F.3d 1491 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Coleman v. Rahija*
   114 F.3d 778 (8th Cir. 1997); *Jolivet v. Deland*, 966 F.2d 573 (10th Cir. 1992)   20

*County of Los Angeles v. The Superior Court of Los Angeles County*
   (Charles William West, Real Party in Interest)
   181 Cal.App.4th 218 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

v

**CASES (Con't)**                                                   **Page**

*County of Sacramento v. Lewis*
523 U.S. 833, 849, 140 L.Ed.2d 1043, 118 S.Ct. 1708 (1998) . . . . . . . . . . . . . 5

*Crowe v. County of San Diego*
303 F.Supp.2d 1050, 1119-20 (S.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . 16

*Cunningham v. Gates*
229 F.3d 1271, 1289-90 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Davidson v. City of Westminister*
32 Cal.3d 197, 209 (Cal. Ct. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Davis v. City of Ellensburg*
869 F.2d 1239 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Davis v. Olin*
886 F.Supp.804 (Kan. Dist. Ct. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*de Villers v. County of San Diego*
156 Cal.App.4th 238, 252-56, 67 Cal.Rptr.3d 253 (2007) . . . . . . . . . . . . . . . 19

*Devereaux v. Abbey*
263 F.3d 1070, 1075 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Eastburn v. Regional Fire Protection Auth.*
31 Cal.4th 1175, 1183, 7 Cal.Rptr.3d 552, 80 P.3d 656 (2003) . . . . . . . . . . . 18

*Edson v. City of Anaheim*
63 Cal.App.4th 1269, 1273 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Franklin v. Fox*
312 F.d. 423, 438 (9th Cir 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Franks v. Delaware*
438 U.S. 154, 165, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) . . . . . . . . . . . . . 6, 7

*Gomez v. Toledo*
446 U.S. 635, 640, 64 L.Ed.2d 572, 100 S.Ct. 1920 (1980) . . . . . . . . . . . . . . 4

*Graham v. Connor*
490 U.S. 386, 396 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hamilton v. City of San Diego*
217 Cal. App. 3d 838, 844 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Harden v. San Francisco BART Dist.*
215 Cal.App.3d 7, 14, 263 Cal.Rptr. 549 (1989) . . . . . . . . . . . . . . . . . . . . . 15

*Harlow v. Fitzgerald*
457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S. Ct. 2727 (1982) . . . . . . . . . . . . . . 8

vi

**CASES (Con't)**                                                           **Page**

*Hiibel v. Sixth Judicial District Court*
   542 U.S. 177, 185, 124 S.Ct. 2451 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hunter v. Bryant*
   502 U.S. 224, 227, 116 L.Ed.2d 589, 112 S. Ct. 534 (1991) . . . . . . . . . . . . . . . . 8

*Gillan v. City of San Marino*
   147 Cal.App.4th 1033, 1048, 55 Cal.Rptr.3d 158 (2007) . . . . . . . . . . . . . . . . . 16

*Illinois v. Gates*
   462 U.S. 213, 235, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) . . . . . . . . . . . . . . . 6

*Illinois v. Wardlow*
   528 U.S. 119, 123-124, 120 S.Ct. 673 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Johnson v. City of Pacifica*
   4 Cal.App.3d 82, 85-88, 84 Cal.Rptr. 246 (1970) . . . . . . . . . . . . . . . . . . . . . 15, 17

*Kayfetz v. State of Cal.*
   156 Cal.App.3d 491, 496-98, 203 Cal.Rptr. 33 (1984) . . . . . . . . . . . . . . . . . . . 16

*Kemmerer v. County of Fresno*
   200 Cal.App.3d 1426, 1435-37, 246 Cal.Rptr. 609 (1988) . . . . . . . . . . . . . . 16, 19

*Lopez v. Southern Cal. Rapid Transit Dist.*
   40 Cal.3d 780, 795, 221 Cal.Rptr. 840, 710 P.2d 907 (1985) . . . . . . . . . . . . . . 18

*Lowry v. Standard Oil Co.*
   63 Cal. App. 2d 1, 6-7 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mittenhuber v. City of Redondo Beach*
   142 Cal.App.3d 1, 5, 190 Cal.Rptr. 694 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Monell v. Department of Social Services*
   436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 11, 12, 21

*Munoz v. City of Union City*
   120 Cal.App.4th 1077, 1112, 16 Cal.Rptr.3d 521 (2004) . . . . . . . . . . . . . . 18, 19

*Oklahoma v. Tuttle*
   471 U.S. 808, 818-20 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pardi v. Kaiser Permanents Hosp., Inc.*
   389 F.3d 840, 852 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pearson v. Callahan*
   129 S. Ct. 808, 818 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pembaur v. City of Cincinnati*
   475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

| | |
|---|---|
| **CASES (Con't)** | **Page** |

*Radwan v. County of Orange*
2010 U.S. Dist. LEXIS 85132, p. 63 (C.D. Cal. 2010) .................... 9

*Saucier v. Katz*
533 U.S. 194, 150 L.Ed.2d 272, 121 S. Ct. 2151, 2156 (2001) .............. 8

*Schneider v. TRW, Inc.*
938 F.2d 986, 992 (9th Cir. 1991) ................................ 14

*Searcy v. Hemet Unified School Dist.*
177 Cal.App.3d 792, 802, 223 Cal.Rptr. 206 (1986) ...................... 18

*Stevenson v. Koskey*
877 F.2d 1435, 1438-39 (9th Cir. 1989) ........................... 4

*Terry v. Ohio*
392 U.S. 1, 23-27 (1968) ....................................... 5

*United States v. Bernard*
623 F.2d 551, 560-61 (9th Cir. 1980) ............................ 7

*United States v. Dorais*
241 F.3d 1124, 1130 (9th Cir.2001) ............................ 5

*United States v. Hoyos*
892 F.2d 1387, 1392 (9th Cir. 1989) ............................ 7

*United States v. Jensen*
425 F.d. 698, 704-705 (9th Cir. 2005) ........................... 7

*United States v. Koon*
34 F.3d 1416, 1446 n. 25 (9th Cir. 1994), *rev'd on other grounds,*
518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996) ................ 9

*United States v. Michael R.*
90 F.3d 340, 346 (9th Cir. 1996) ............................... 5

*United States v. Miranda-Guerena*
445 F.3d 1233, 1236 (9th Cir. 2006) ............................ 5

*United States v. Osborne*
203 F.3d 1176, 1181 (9th Cir. 2000) ............................ 5

*United States v. Valencia-Amezcua*
278 F.3d 901, 906 (9th Cir. 2002) ........................... 13, 14

*United States of America v. Buckner*
179 F.3d at 837 (9th Cir. 1999) ............................... 6

*U.S. v. Brooks*
367 F.3d 1128 (9th Cir. 2004) ................................ 6

**CASES (Con't)**                                                                   **Page**

*U.S. v. Delano*
    348 Fed.Appx. 258 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*U.S. v. Reed*
    226 Fed.Appx. 746 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ware v. Dunn*
    80 Cal. App. 2d 936, 942 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*White v. Towers*
    37 Cal.2d 727, 729-34, 235 P.2d 209 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . 15


## CALIFORNIA CONSTITUTION

Article I, Section 31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


## UNITED STATES CONSTITUTION

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


## STATUTES

42 United States Code
    § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 10, 11, 20

California Penal Code
    § 148(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    § 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    § 240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    § 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    § 835(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    § 847 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    § 422.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19
    § 422.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

California Civil Code
    § 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    § 51.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    § 51.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20
    § 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20
    § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20
    § 52.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATUTES (Con't)**                                                   **Page**

California Government Code
§ 815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 815(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 815(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19
§ 815.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
§ 815.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
§ 820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
§ 821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

## SECONDARY SOURCES

Ninth Cir. Man. of Model Jury Inst. Civil
Inst. 11.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1 M. Schwartz, *Section 1983 Litigation: Claims and Defenses* (4th ed. 2005)
§§ 1.04, 6.03[A] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Martin A. Schwartz, *Section 1983 Litigation, Claims and Defenses* (2005)
§ 6.02(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5 B. Witkin, *supra,* Torts
§§ 183, 368 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Michael Curzi has filed suit against the City of Los Angeles, the Los Angeles Police Department ("LAPD'), in addition to LAPD Officers Kevin Hawn, Jason Stanley, Brandon Keifer and Anthony Keller.

This litigation arises from an incident which occurred at the Plaintiff's former residence on Sunday, March 18, 2007 at approximately 1:45 a.m.   LAPD Officers Bradon Keifer, Paul Tajii,[1] Kevin Hawn, Jason Stanley and Anthony Keller responded to the location in response to a 911 call from the apartment complex which reported a domestic violence incident in Apartment 207, where Plaintiff resided at the time with his minor son, Christopher Curzi.

The comments to the call indicated a woman was screaming that she could not breathe.  When the officers arrived, they could hear two voices yelling from inside the apartment.  The officers formulated a tactical plan and attempted to make contact with the occupants.  Officer Keifer knocked several times on the door of Apartment No. 207.  In response, Plaintiff opened the door abruptly and began shouting at the officers.  Plaintiff refused to step out of the apartment and place his hands on top of his head as directed by Officer Keifer.  Plaintiff, instead, turned as if he was about to re-enter the apartment.  He then suddenly began to exit the apartment, but tripped and fell to the ground.  Plaintiff resisted the officers attempts to handcuff him.  However, Officers Hawn and Stanley were successful in handcuffing Plaintiff.  A few of the officers smelled the odor of alcohol emitting from Plaintiff's breath and he appeared to be intoxicated because of his slurred speech and irrate demeanor.  Officers Keifer and Tajii contacted Christopher Curzi who explained he and his father were involved in a heated argument because he refused to stop playing his X-box video game and go to bed.

---

[1]     Officer Tajii is now a DEA agent and is not being sued.

1

Plaintiff was briefly detained during the incident and when it was determined he had not physically abused his son, the handcuffs were removed. Plaintiff refused medical attention and decided to visit his own physician after the incident. Photographs of Plaintiff's injuries were taken at the time of the incident and within a few days at the LAPD's North Hollywood Station.

According to Plaintiff, he suffered a swollen spleen as a result of the incident and underwent surgery on his right elbow. At the time of the incident, Plaintiff was unemployed and receiving disability benefits for an unrelated carpal tunnel injury he suffered while employed at Pharmavite Corporation during 2004.

Plaintiff filed this action in the Los Angeles County Superior Court and the Defendants filed a Notice of Removal in response thereto. Plaintiff alleges the following claims in his Third Amended Complaint: Assault, Battery, Unlawful Detention/False Arrest; Intentional Infliction of Emotional Distress Excessive Force, Failure to Intervene to Prevent Violation of Civil Rights, *Monell* Liability and Negligence. Defendants have answered the operative Complaint.

## II.   **FACTUAL CONTENTIONS.**

At trial, Defendants intend to prove the following:

1.     Defendants were employed as LAPD Officers at the time of the incident.

2.     Defendants responded to a 911 call of a domestic violence incident at the location of 5407 Colfax Avenue, Apartment 7 in the City of Los Angeles at approximately 1:35 a.m. and the comments to the call indicated a woman was heard screaming that she could not breathe;

3.     The officers heard yelling and screaming from inside Plaintiff's apartment, Apartment No. 207 after they arrived at the location;

4.     The officers formed a tactical plan before attempting to make contact with the residents;

///

2

5.    LAPD officers are trained that domestic violence calls are extremely dangerous and have resulted in deadly attacks on police officers;

6.    The officers did not know how many occupants were inside the location;

7.    The officers did not know whether there were any weapons inside the location;

8.    The officers were not familiar with the occupants of the location;

9.    The officers heard at least two voices from inside the apartment;

10.    Plaintiff answered the door abruptly and began yelling at the officers;

11.    Some of the officers smelled the odor of alcohol from Plaintiff's breath;

12.    Plaintiff appeared to be intoxicated as a result of his slurred speech and irate demeanor;

13.    Plaintiff was not pushed or taken to the ground by any officers;

14.    Plaintiff tripped and fell at the threshold of his apartment door and landed on his front side;

15.    As a result, Plaintiff appears to have injured his upper lip and spleen;

16.    Plaintiff did not tell the officers he had carpal tunnel before he was handcuffed;

17.    Plaintiff resisted the officers efforts to handcuff him;

18.    Plaintiff did not tell the officers he was being treated for any medical condition until after he was handcuffed;

19.    Plaintiff admits that Officer Keifer did not touch him in any way;

20.    Officer Keller is alleged to have "squeezed" Plaintiff's fingers, but there is no medical evidence that Plaintiff suffered any injury as a result thereof;

21.    Plaintiff did not complain of any abdominal pain or pain from his chest;

22.    Plaintiff was offered medical treatment, but refused the offer to have an ambulance respond to the scene;

23.    Plaintiff was detained only for a reasonable period of time and then the handcuffs were removed;

3

1  24. Photographs of Plaintiff's injuries were taken at the scene;

2  25. Additional photographs of Plaintiff's injuries were taken at LAPD's North

3 Hollywood Division;

4  26. The officers used a standard handcuffing technique to secure the handcuffs

5 on Plaintiff's wrists while he was on the ground;

6  27. Plaintiff never provided the officers with an opportunity to assess his

7 medical condition before he was handcuffed;

8  28. Plaintiff was not arrested;

9  29. Plaintiff was not prosecuted;

10  30. The Officers were not required by law or LAPD policy to perform any Field

11 Sobriety Tests because it is not unlawful to be drunk or intoxicated inside one's

12 residence.

13  31. Assuming Plaintiff required surgery, it was the result of a pre-existing

14 condition and/or his own actions.

15

16 **III. LEGAL CONTENTIONS**

17  According to Plaintiff, his rights secured by the Fourth Amendment were violated

18 by the Defendant Officers because they allegedly detained him without reasonable

19 suspicion, arrested him without probable cause and subjected him to excessive force.

20 Plaintiff also alleges a claim for Failure to Intervene to prevent Civil Rights Violation.

21  **A. 42 U.S. C. Section 1983**

22  A plaintiff who claims relief under 42 U.S.C. Section 1983 has the burden of

23 proving the following four elements: (1) violation of a federal right (2) proximately

24 caused (3) by the conduct of a "person" (4) who acted "under color" of state law. 42

25 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635, 640, 64 L.Ed.2d 572, 100 S.Ct. 1920

26 (1980); *Brower v. County of Inyo*, 489 U.S. 593, 599, 103 L.Ed.2d 628, 109 S.Ct. 1378

27 (1989); *Stevenson v. Koskey*, 877 F.2d 1435, 1438-39 (9th Cir. 1989); *Baker v.*

28 *McCollan*, 443 U.S. 137, 144, 146, 61 L.Ed.2d 433, 99 S.Ct. 2689 (1979); *Barry v.*

1    *Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) [violation of state law does not give rise to

2    §1983 action]; Ninth Cir. Man. of Model Jury Inst. Civil, Inst. 11.1; 1 M. Schwartz,

3    *Section 1983 Litigation: Claims and Defenses* (4th ed. 2005), §§ 1.04, 6.03[A].

4          Also, mere negligence cannot give rise to Section 1983 liability.  *County of*

5    *Sacramento v. Lewis*, 523 U.S. 833, 849, 140 L.Ed.2d 1043, 118 S.Ct. 1708 (1998) [due

6    process]; *Brower v. County of Inyo*, 489 U.S. 593, 596, 103 L.Ed.2d 628, 109 S.Ct. 1378

7    (1989) [Fourth Amendment]; *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001)

8    ["[T]here is no constitutional due process right to have ... witnesses ... interviewed in a

9    particular manner, or to have the investigation carried out in a particular way."]; Martin

10   A. Schwartz, *Section 1983 Litigation, Claims and Defenses* (2005), § 6.02(B) ["In due

11   process, Equal Protection, Eighth Amendment, and Fourth Amendment seizure cases,

12   an allegation of negligence will not state a claim for relief under § 1983 ...."].

13         **B.    Terry Stop/Reasonable Suspicion**

14         A police officer may conduct a brief stop for investigatory purposes when the

15   officer has only "reasonable suspicion" to believe the stopped individual is engaged in

16   criminal activity. *Terry v. Ohio*, 392 U.S. 1, 23-27 (1968), *Allen v. City of Portland*, 73

17   F.3d 232, 235 (9th Cir. 1996).[2]

18         "Reasonable suspicion" is formed by 'specific, articulable facts which, together

19   with objective and reasonable inferences, form the basis for suspecting that the particular

20   person detained is engaged in criminal activity.'" *United States v. Dorais*, 241 F.3d

21   1124, 1130 (9th Cir.2001) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th

22   Cir. 1996)). It requires only "a minimal level of objective justification." *Illinois v.*

23   *Wardlow*, 528 U.S. 119, 123 (2000). A court must consider the totality of the

24   circumstances when determining whether reasonable suspicion existed. *United States*

25   *v. Osborne*, 203 F.3d 1176, 1181 (9th Cir. 2000).

26   ――――――――――――――

27         [2]    Moreover, an investigatory stop of a vehicle is justified under the Fourth
     Amendment if the officer reasonably suspects that only a traffic violation has occurred.

28   *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236 (9th Cir. 2006).

1    A law enforcement officer's reasonable suspicion that a person may be involved

2 in criminal activity permits the officer to stop the person for a brief time and take

3 additional steps to investigate further. *Hiibel v. Sixth Judicial District Court*, 542 U.S.

4 177, 185, 124 S.Ct. 2451 (2004). "Reasonable suspicion" is a less demanding standard

5 than probable cause, but it requires the officer be able to articulate more than an inchoate

6 and unparticularized suspicion or hunch of criminal activity. *Illinois v. Wardlow*, 528

7 U.S. 119, 123-124, 120 S.Ct. 673 (2000).

8    Further, a 911 call regarding a domestic violence incident provides the legal cause

9 for a detention. *U.S. v. Brooks*, 367 F.3d 1128 (9th Cir. 2004) (See also, *U.S. v. Delano*,

10 348 Fed.Appx. 258 (9th Cir. 2009); and *U.S. v. Reed*, 226 Fed.Appx. 746 (9th Cir. 2007).)

11 It is undisputed that Officers Keifer and Tajii responded to a 911 call which reported a

12 domestic violence incident at the Plaintiff's residence. In fact, the comments of the call

13 provided a female was screaming she could not breathe. Moreover, LAPD officers are

14 trained that domestic violence calls are especially dangerous and therefore, the request

15 for assistance from additional LAPD Officers (i.e. Hawn, Stanley and Keller) was

16 appropriate. Plaintiff was detained because the officers had reasonable suspicion to

17 believe Plaintiff was engaged in criminal activity (i.e. domestic violence).

18    **C.    Probable Cause to Arrest**

19    According to Plaintiff, he was arrested without probable cause in violation of the

20 Fourth Amendment. Probable cause exists when police have knowledge at the moment

21 of arrest of facts and circumstances based on reasonably trustworthy information that

22 would warrant a belief by a reasonably prudent person that the person arrested has

23 committed a criminal offense. *Franklin v. Fox*, 312 F.d. 423, 438 (9th Cir 2002) citing

24 *Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964); *United States of*

25 *America v. Buckner*, 179 F.3d at 837 (9th Cir. 1999). The evidence need support "only

26 the probability, and not a prima facie showing, of criminal activity," and such evidence

27 need not be admissible, but only legally sufficient and reliable. *Id.* citing *Illinois v.*

28 *Gates*, 462 U.S. 213, 235, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); see also *Franks v.*

6

1    *Delaware*, 438 U.S. 154, 165, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).   Officers are

2    allowed to rely on collective knowledge of other investigating officers and reliable

3    witnesses. *United States v. Jensen*, 425 F.d. 698, 704-705 (9th Cir. 2005); *United States*

4    *v. Bernard*, 623 F.2d 551, 560-61 (9th Cir. 1980); *United States v. Hoyos*, 892 F.2d

5    1387, 1392 (9th Cir. 1989), overruled on other grounds.   For the reasons stated herein,

6    Plaintiff cannot claim the officers had no right to detain and arrest him.

7        While waiting for back-up officers to arrive, Officers Keifer and Tajii heard two

8    voices yelling at one another from inside Plaintiff's apartment.   Officers Hawn and

9    Stanley also heard the shouting upon their arrival.   Plaintiff appeared to be under the

10    influence of alcohol, was irate and uncooperative with the officers when asked to step

11    outside of his apartment and to place his hands above his head.   At that time, Plaintiff

12    was dressed in a long-sleeve button down shirt which concealed his waistband

13    area and it was also unknown whether there were any victims and/or weapons inside the

14    residence.   Plaintiff acted suspiciously when he ranted, "I don't have anything" and

15    appeared agitated by the officers' presence. Plaintiff's actions constituted an obstruction

16    of the officers' investigation in violation of California *Penal Code* Section 148(a).

17    Accordingly, the officers had probable cause to arrest Plaintiff after he failed to

18    cooperate with their efforts to investigate the incident.

19        Further, two supervisors, Sergeants McNeil and Moussa responded to the location

20    and were required by LAPD policy to interview the officers and available witnesses.

21    Therefore, the actions of the officers were reasonable and even if Plaintiff was arrested

22    without probable cause, the officers are entitled to qualified immunity.

23    **D.    Qualified Immunity**

24        Even if Defendant Officers did not have reasonable suspicion to detain Plaintiff

25    or if the Court concludes Plaintiff was "arrested without probable cause", they are

26    entitled to qualified immunity as they acted reasonably based on their training and

27    understanding of law at that time.   A reasonable officer standing in their shoes would

28    have conducted the same investigation which was conducted by the Defendant Officers

7

1 and their supervisors.

2     **1.**    **Elements of Qualified Immunity**

3      The defense of qualified immunity shields law enforcement officers from suit

4 under 42 U. S. C. § 1983, "insofar as their conduct does not violate clearly established

5 statutory or constitutional rights of which a reasonable person would have known."

6 *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S. Ct. 2727 (1982); <u>see</u>

7 <u>also</u>, *Anderson v. Creighton*, 483 U.S. 635, 97 L.Ed.2d 523, 107 S. Ct. 3034 (1987).

8 Because qualified immunity is an immunity from suit rather than simply a defense to

9 liability, the cases are uniform in holding that a determination should be resolved by the

10 trial court at the earliest possible stage of the proceeding. *Hunter v. Bryant*, 502 U.S.

11 224, 227, 116 L.Ed.2d 589, 112 S. Ct. 534 (1991); *Anderson v. Creighton, supra*, 483

12 U.S. at 646.

13      Usually, to determine whether an officer is entitled to qualified immunity, the

14 court must conduct a two-part analysis. First, the court must consider whether, "[t]aken

15 in the light most favorable to the party asserting the injury, do the facts alleged show the

16 officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 150

17 L.Ed.2d 272, 121 S. Ct. 2151, 2156 (2001). If the answer is "no," the inquiry ends there

18 because there is no constitutional violation. *Id.* If, however, a constitutional violation

19 could be made out on a favorable view of the plaintiff's allegations, the next step is to

20 inquire whether the particular constitutional right was "clearly established" at the time

21 the officer acted. *Id.* The "clearly established" inquiry must be "undertaken in light of

22 the specific context of the case, not as a broad general proposition . . . , " with the focus

23 being on "whether it would be clear to a reasonable officer that his conduct was unlawful

24 in the situation he confronted." *Id.* (emphasis added.)[3]

25      Here, Defendants contend that clearly established law allows an officer to detain

26 an individual where it appears that he or she is engaged in criminal activity. On March

27

28     [3]    See <u>also</u>, *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)(holding two-step qualified immunity analysis is no longer mandatory).

18, 2007, the Defendant Officers acted reasonably in responding to the location, requesting that Plaintiff step outside and place his hands on his head and handcuffing plaintiff. The Officers' supervisors then conducted an investigation by interviewing Plaintiff, his son and Plaintiff's neighbor, Jason Long. The Defendant Officers were no longer in control of the scene once their supervisors responded to the location and conducted their own investigation. This constituted an intervening act and therefore, the Defendant Officers are not liable for the so-called unlawful detention and/or arrest Plaintiff Curzi claims took place. *Arnold v. International Business Machines Corporation*, 637 F.2d 1350; 1355-58 (9th Cir. 1981)

### E.    Failure to Intervene to Prevent Violation of Civil Rights

Plaintiff's Seventh Cause of Action alleges a theory of liability based on the Defendant Officers' failure to intervene and "prevent the unjustified and unwarranted use of excessive force . . . and unreasonable detention of Plaintiff Michael Curzi." (Third Amended Complaint, Paragraph 84). In order to prevail on this claim, Plaintiff must prove the following: (i) Plaintiff's constitutional right to be free from an unreasonable seizure was violated; (ii) Defendants were present when Plaintiff suffered this constitutional deprivation; (iii) Defendants had a realistic opportunity to intervene and prevent Plaintiff from suffering a deprivation of his constitutional rights and (iv) the failure of Defendants to intervene was a substantial factor in causing harm to Plaintiff. A "realistic opportunity" to intervene may not exist where an officer is not present during a constitutional violation or the violation happens too quickly. *Radwan v. County of Orange*, 2010 U.S. Dist. LEXIS 85132, p. 63 (C.D. Cal. 2010); *United States v. Koon*, 34 F.3d 1416, 1446 n. 25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996); *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). Here, Plaintiff has no evidence to support this claim.

### F.    Plaintiff's *Monell* Claim

As for the *Monell* claim, Plaintiff alleges at Paragraph 97 of the Third Amended Complaint there is liability on the part of the City as a result of the following: (i)

9

1   preparation of investigative reports designed to vindicate the use of force, regardless of
2   whether such use was justified; (ii) preparation of investigative reports which uncritically
3   rely solely on the word of police officers involved in excessive force incidents and
4   unreasonable detention which systematically fail to credit testimony by non-police
5   witnesses; (iii) preparation of investigative reports which omit factual information and
6   physical evidence which contradicts the accounts of the officers involved; (iv) assigning
7   investigation of these incidents to police officers and/or their supervisors involved in
8   excessive force incidents; (v) failure to review investigative reports by responsible
9   superior officers for accuracy or completeness and by the acceptance of conclusions
10  which are unwarranted by the evidence of excessive force which contradict such
11  evidence; (vi) failure to enact and implement policies, practices and procedures as well
12  as training relating to the use of force.

13      The City of Los Angeles cannot be held liable under 42 U.S.C. § 1983, because
14  Plaintiff was not deprived of any of his constitutional rights.  Even if Plaintiff can
15  establish a violation of civil rights, the City of Los Angeles did not have an established
16  custom, practice or policy which caused the alleged violation. See *Monell v. Department*
17  *of Social Services*, 436 U.S. 658 (1978).  To prevail on a *Monell* claim, Plaintiff must
18  establish (1) deprivation of a federal constitutional right; (2) arising from a custom or
19  policy "created by those who may be fairly said to determine official policy"; and (3) a
20  deliberate indifference to their constitutional rights. *Monell*, supra, 436 U.S. 658; *Blair*
21  *v. City of Pomona* 223 F.3d 1074 (9th Cir. 2000).  A municipality cannot "cause" a
22  constitutional violation giving rise to a Section 1983 claim unless it establishes a policy,
23  custom or practice that is the "moving force" behind the violation.  See *Oklahoma v.*
24  *Tuttle*, 471 U.S. 808, 818-20 (1985). "At the very least there must be an affirmative link
25  between the policy and the particular constitutional violation alleged." Id. at 823.

26      Plaintiff's burden in establishing causation is a heavy one. *City of Canton of Ohio*
27  *v. Harris*, 489 U.S. 378 (1989).  Where the Plaintiff seeks to impose *Monell* liability
28  based on an informal custom or practice, the Plaintiff must show that informal conduct

was so frequent or pervasive that it must necessarily have come to the attention of the responsible policymaker who then acted with deliberate indifference in failing to correct the conduct. *Harris*, *supra* 489 U.S. 378; *Board of the County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1997). A deliberate indifference is a conscious choice to follow a course of action among various alternatives. *Harris*, *supra*, 489 U.S. at 384.

In addition, there must be a directive or order attributable to a municipal policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). The mere fact that a policymaker defers to the discretionary decision of or agrees with the opinions and recommendations of a subordinate does not turn the subordinate's decision into official policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). In order for the actions of a lower-level employee to give rise to a *Monell* claim, those actions must be persistent and widespread and the official policymaker must take no corrective action. *Monell*, *supra*, 436 U.S. 658; *Tuttle*, *supra*, 471 U.S. 808; *Praprotnik*, *supra*, 485 U.S. 112.

There is no respondeat superior liability under 42 U.S.C. § 1983. *Monell*, *supra*, 436 U.S. 658 (1978). "Where a Plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to so do, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, *supra*, 520 U.S. at 405. Thus, the law is clear that Plaintiff cannot hold the City of Los Angeles liable under *Monell* simply because it employs an alleged tortfeasor.

To establish *Monell* liability for failure to train or adequately supervise subordinates, the evidence must show a pattern of inadequate training which amounts to a deliberate indifference to the rights of persons with whom the inadequately trained employee comes into contact. See *Harris*, *supra*, 489 U.S. 378; *Davis v. City of Ellensburg*, 869 F.2d 1239 (9th Cir. 1989).

The evidence revealed during the depositions and written discovery shows just the opposite and therefore, Plaintiff cannot prevail on his *Monell* allegations. Also, Plaintiff

11

1   has failed to cite any law which provides Plaintiff is entitled to a "use of force"
2   investigation or any investigation which results in his favor.  Stated differently, the
3   manner in which the police department conducts a use of force investigation is not the
4   cause of alleged excessive force or an unlawful arrest.  Further, it is undisputed that
5   LAPD Officers receive extensive training on use of force tactics during the time they
6   attend the Los Angeles Police Academy and also receive such training following
7   graduation from the Academy.  As such, even if Plaintiff could prove one or more of the
8   Defendant Officers violated his constitutional rights, there is no evidence to support the
9   *Monell* claims.

10      **G.    The Assault and Battery Claims Also Fail**

11          An assault "is an unlawful attempt, coupled with a present ability, to commit a
12   violent injury on the person of another." California *Penal Code* § 240.  A battery is "any
13   willful and unlawful use of force or violence upon the person of another." California
14   *Penal Code* Sections 240 and 242.  Courts typically use these Penal Code definitions in
15   adjudicating civil assault claims.  See *Ware v. Dunn*, 80 Cal. App. 2d 936, 942 (1947).
16   Apprehension of offensive or harmful contact is the essence of the tort of assault. *Lowry*
17   *v. Standard Oil Co.,* 63 Cal. App. 2d 1, 6-7 (1944)("'Generally speaking, an assault is
18   a demonstration of an unlawful intent by one person to inflict immediate injury on the
19   person of another then present.' . . .A civil action for assault is based upon an invasion
20   of the right of a person to live without being put in fear of personal  harm").

21          Further, *Penal Code* Section 835(a) provides: "[a]ny peace officer who has
22   reasonable cause to believe that the person to be arrested has committed a public offense
23   may use reasonable force to effect the arrest, to prevent escape or to overcome
24   resistance."  Moreover,

25              "[u]nlike private citizens, police officers act under color of
26              law to protect the public interest.  They are charged with
27              acting affirmatively and using force as part of their duties,
28              because 'the right to make an arrest or investigatory stop

12

necessarily carries with it the right to use some degree of
physical coercion or threat thereof to effect it.' (*Graham v.
Connor*, 490 U.S. 386, 396 (1989) . . . They are, in short, not
similarly situated to the ordinary battery Defendant and need
not be treated the same. In these cases, then, 'the Defendant
police officer is in the exercise of the privilege of protecting
the public peace and order [and] he is entitled to the even
greater use of force than might be in the same circumstances
required for self-defense. [P] . . .[P] . . .[T]he burden of proof
[is] upon the Plaintiff to establish the use of excessive force .
. . [Citation]."

*Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1273 (1998). Officers Stanley and
Hawn did not use "excessive force" in placing Plaintiff in handcuffs or otherwise.
It is undisputed that Defendant Officer Keifer did not have physical contact with
Plaintiff. Also, as set forth above, Defendant Officer Keller is alleged to have bent some
of Plaintiff's fingers, but there is no evidence that this alleged act of excessive force
caused Plaintiff to suffer any injury. As such, the evidence fails to support these claims,
as well

## H.   **False Arrest**

In order to prevail on a claim for false arrest pursuant to California law, Plaintiff
must prove his arrest was unlawful. California *Penal Code* Section 847 provides
immunity to a false arrest claim whenever a peace officer has "reasonable cause to
believe that the person to be arrested has committed a felony, whether or not a felony has
in fact been committed."[4]  Whether the police had probable cause to arrest is a mixed
question of law and fact. *United States v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th

---

[4]     Plaintiff's Third Cause of Action for Unlawful Detention/False Arrest is
brought pursuant to California *Penal Code* §236 which defines "false imprisonment" as
"the unlawful violation of the personal liberty of another."

Cir. 2002).   Probable cause to arrest will be found if, under the totality of the circumstances known to the arresting officers at the time of the arrest, a prudent person would have concluded that there was a fair probability that a person had committed a crime. *Id.*   Probable cause may exist even though there may be some room for doubt. *Hamilton v. City of San Diego*, 217 Cal. App. 3d 838, 844 (1990). "It is also well established that the judgments made by law enforcement officers in the heat of their battle against crime need not be assessed in the abstract; weight may be given to the experienced judgment of the officers." *United States v. Valencia-Amezcua, supra*, 278 F. 3d at 906. As stated above, the restraint on Plaintiff's freedom was reasonable and there is no evidence to support this claim.

## I.    **Intentional Infliction of Emotional Distress**

### 1.    **Plaintiff's Burden of Proof**

The cause of action for Intentional Infliction of Emotional Distress ("IIED") includes proof of conduct that is extreme, outrageous or unprivileged.  Plaintiff does not allege such conduct in this case and cannot do so based on the evidence.

In order to prevail on this claim, Plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Pardi v. Kaiser Permanents Hosp., Inc.*, 389 F.3d 840, 852 (9th Cir. 2004).  To be outrageous, "conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Schneider v. TRW, Inc.,* 938 F.2d 986, 992 (9th Cir. 1991).  As explained above, the Defendants did not engage in extreme and outrageous conduct with the intention of causing or reckless disregard of the probability of causing emotional distress.   To be considered outrageous, the Defendant Officers' alleged conduct "... must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." See *Davidson v. City of Westminister*, 32 Cal.3d 197, 209 (Cal. Ct. App. 1982). Nothing about the Defendant Officer's alleged

14

1    conduct is so extreme that it exceeds all bounds of that tolerated by a civilized
2    community. Further, Plaintiff did not suffer severe or extreme emotional distress as a
3    result of the Defendant Officers' conduct. This is especially true since Plaintiff had pre-
4    existing symptoms of depression and emotional distress prior to the March 18, 2007
5    incident.

6        **2.    *Government Code* Sections 815.2 and 821.6**

7        Under California law, public employees such as police officers are absolutely
8    immune from liability for the conduct allegedly engaged in by the Defendant officers
9    within the scope of their employment. (Cal. *Gov't Code* § 821.6). The City is also
10   derivatively immune under *Government Code* Section 815.2, subd. (b). These statutes
11   read as follows:

12       *Government Code* Section 821.6.  A public employee is not liable for injury
13       caused by his instituting or prosecuting any judicial or administrative proceeding
14       within the scope of his employment, even if he acts maliciously and without
15       probable cause.

16

17       *Government Code* Section 815.2. ...  (b) Except as otherwise provided by statute,
18       a public entity is not liable for an injury resulting from an act or omission of an
19       employee of the public entity where the employee is immune from liability.

20

21       This immunity applies to all acts leading to the filing of criminal charges,
22   including investigation.[5] It applies whether the acts are alleged to have been intentional
23   or negligent. *Johnson v. City of Pacifica*, 4 Cal.App.3d 82, 85-88, 84 Cal.Rptr. 246
24   (1970); *White v. Towers*, 37 Cal.2d 727, 729-34, 235 P.2d 209 (1951).

25   ///

26

27       [5]     However, it does not apply to false imprisonment. Cal. *Gov't Code* Section
28   820.4; *Harden v. San Francisco BART Dist.*, 215 Cal.App.3d 7, 14, 263 Cal.Rptr. 549 (1989).

"Immunity under *Government Code* Section 821.6 is not limited to claims for malicious prosecution, but also extends to other causes of action arising from conduct protected under the statute, including defamation and intentional infliction of emotional distress." *Gillan v. City of San Marino*, 147 Cal.App.4th 1033, 1048, 55 Cal.Rptr.3d 158 (2007), citing *Kayfetz v. State of Cal.*, 156 Cal.App.3d 491, 496-98, 203 Cal.Rptr. 33 (1984) [defamation] and *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 1435-37, 246 Cal.Rptr. 609 (1988) [intentional infliction of emotional distress]; see also *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1208-14, 34 Cal.Rptr.2d 319 (1994) *[Gov't Code § 821.6* immunity bars intentional and negligent infliction of emotional distress claims against police officers]; *accord Crowe v. County of San Diego*, 303 F.Supp.2d 1050, 1119-20 (S.D. Cal. 2004); see also 5 B. Witkin, *supra,* Torts, §§ 183, 368.

> "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers.  A breakdown of this system at the investigative or accusatory level would wreak untold harm.   'Criminal law does not enforce itself.   It demands the assistance of valid evidence and fearless officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution.' [Citation.] It is patent that Defendant Towers is a law enforcement officer, charged with the duty of enforcing laws for the protection of fish and game. As such officer he is entitled to the immunity

16

from civil liability with which the law surrounds officials
directly connected with the judicial processes.   To rule
otherwise would place every honest law enforcement officer
under an unbearable handicap and would redound to the
detriment of the body politic. 'The public welfare requires that
this choice (whether or not to institute proceedings) shall be
free of all fear of personal liability.  To assure this freedom of
action it is deemed best to make the assurance positive and
definite by securing him against even actions based upon a
malicious abuse of his official power.' [Citation.]"

*Johnson*, 4 Cal.App.3d at 87, quoting *White*, 37 Cal.2d at 729-730.  The foregoing
statutory immunity applies to Plaintiff's Cause of Action for Intentional Infliction of
Emotional Distress and therefore, the claims fails.

**J.**     **Defendants Did Not Violate Plaintiff's Civil Rights Under California**
         ***Civil Code* § 52.1(a).**

Plaintiff cannot prove that Defendants violated any of their civil rights pursuant
to Cal. *Civ. Code*, § 52.1(a), because none of the LAPD officers, interfered or attempted
to interfere with one or more of Plaintiffs state or federal statutory or constitutional
rights, by threats, intimidation, or coercion. Further, Defendants are entitled to immunity
under *Government Code* Section 821.6 because the officers responded to Plaintiff's
residence in response to a 911 call and conducted an investigation subsequent to their
arrival. (See *County of Los Angeles v. The Superior Court of Los Angeles County*
(Charles William West, Real Party in Interest), 181 Cal.App.4th 218 (2009).[6] Therefore,
this claim fails, as well.

---

[6]     See also, *County of Los Angeles v. The Superior Court of Los Angeles
County* (Charles William West, Real Party In Interest), 181 Cal.App.4th 218 (2009),
which holds that *Government Code* Section 821.6 bars a claim under Section 52.1 which
stems from an investigation and subsequent prosecution.

1    **K.   <u>Negligent Hiring, Training and Supervision</u>**

2    Plaintiff's Ninth Case of Action is for Negligence and is alleged against all

3    Defendants, including the City of Los Angeles. In support of this claim, Plaintiff alleges

4    violations of California Constitution Article I, Section 31, in addition to *Penal Code*

5    Sections 422.6; 422.7 and *Civil Code* Sections 51; 51.5; 51.7 and 52.

6    In California, all government tort liability is based on statute. Cal. *Gov. Code*, §

7    815; *Washington v. County of Contra Costa*, 38 Cal.App.4th 890, 895-96, 45 Cal.Rptr.2d

8    646 (1995). *Government Code* Section 815, subdivision (a), specifically provides that

9    "[a] public entity is not liable for an injury, whether such injury arises out of any act or

10   omission of the public entity or a public employee or any other person." Moreover,

11   Section 815, subdivision (b), states "[the] liability of a public entity established by this

12   part ... is subject to any immunity of the public entity provided by statute ...." And as

13   noted by the legislative comment to Section 815, the immunity provisions "[under]

14   subdivision (b) of [section 815] ...will as a general rule prevail over all sections imposing

15   liability." Senate Leg. Comm'n Com., West Ann. *Gov. Code* § 815 (1995) p. 168.

16   In order to state a cause of action against a public entity, "every fact essential to

17   the existence of statutory liability must be pleaded with particularity, including the

18   existence of a statutory duty" and identification of the statute(s) claimed to establish the

19   duty. *Searcy v. Hemet Unified School Dist.*, 177 Cal.App.3d 792, 802, 223 Cal.Rptr. 206

20   (1986); *Lopez v. Southern Cal. Rapid Transit Dist.,* 40 Cal.3d 780, 795, 221 Cal.Rptr.

21   840, 710 P.2d 907 (1985). General or conclusory allegations are inadequate.

22   *Mittenhuber v. City of Redondo Beach*, 142 Cal.App.3d 1, 5, 190 Cal.Rptr. 694 (1983);

23   *Biltgen v. City of San Mateo*, 127 Cal.App.2d 474-75, 274 P.2d 21 (1954).

24   "[D]irect tort liability of public entities must be based on a specific statute

25   declaring them to be liable, or at least creating a specific duty of care, and not on the

26   general tort provisions of *Civil Code* Section 1714." *Munoz v. City of Union City*, 120

27   Cal.App.4th 1077, 1112, 16 Cal.Rptr.3d 521 (2004), quoting *Eastburn v. Regional Fire*

28   *Protection Auth.,* 31 Cal.4th 1175, 1183, 7 Cal.Rptr.3d 552, 80 P.3d 656 (2003).) None

of the statutes alleged at Paragraph 111 of the Third Amended Complaint creates a cause of action based on direct liability as to the City. Further, a cause of action for negligent supervision or retention against a public entity does not exist under California law. *de Villers v. County of San Diego*, 156 Cal.App.4th 238, 252-56, 67 Cal.Rptr.3d 253 (2007); *Munoz*, 120 Cal.App.4th at 1110-1113.

In addition, the City is immune from suit under the discretionary immunity of *Government Code* Section 820.2. See *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 1435, 246 Cal.Rptr. 609 (1988) [public entity's decision to discipline employee fell within discretionary immunity of *Gov. Code* Section 820.2]. *Government Code* Section 820.2 provides, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." In turn, the City is derivatively immune under *Government Code* section 815 (b) which provides in part, "[t]he liability of a public entity established by this part ... is subject to any immunity of the public entity provided by this statute ...." As such, the City is derivatively immune from any claim it negligently employed or disciplined an employee. For these reasons, the City is immune from a claim of negligence, based on a direct liability theory.

As for the allegations made against the Defendant officers in the Ninth Cause of Action for Negligence, Plaintiff is simply re-asserting the same allegations made in support of claims for false arrest and battery (i.e. excessive force) which are intentional torts. Moreover, *Penal Code* §§422.6 and 422.7 do not create private causes of action, but rather allow for prosecution of acts constituting the interference with civil rights because of "actual or perceived characteristics" of the victim. Even if Section 422.6 allowed for a private cause of action, Plaintiff fails to identify the so-called "actual or perceived characteristics" of Plaintiff who is a Caucasian male, like the Defendant Officers.

///

19

1    Finally, Plaintiff's Fifth Cause of Action is brought pursuant to *Civil Code*

2  Sections 51.7; 52 and 52.1 and the negligence claim is, therefore, redundant. (See

3  Paragraphs 62 and 111 of the Plaintiff's Third Amended Complaint.)  Since Plaintiff

4  cannot plead facts which demonstrate Plaintiff was owed any duty by the Defendant

5  Officers, the negligence claim fails as a matter of law.

6    **L.   Defendants are Not Liable for Punitive Damages**

7    Plaintiff is suing the Defendant Officers in their official capacities and seeks the

8  recovery of punitive damages. (See Paragraphs 5, 6, 7 and 8 of the Third Amended

9  Complaint). Punitive damages may not be assessed against an individual sued in his

10  official capacity. *Davis v. Olin*, 886 F.Supp.804 (Kan. Dist. Ct. 1995).  If sued in his

11  individual capacity, punitive damages may be awarded when the Defendant acts with evil

12  motive or intent, recklessly or with callous indifference to the federally protected rights

13  of the Plaintiff. *Coleman v. Kaye*, 87 F.3d 1491 (1996).  The focus in determining

14  whether to award punitive damages in a Section 1983 action is on the intent of the

15  Defendant and whether the defendant's conduct is of the sort that calls for deterrence and

16  punishment. *Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997); *Jolivet v. Deland*, 966

17  F.2d 573 (10th Cir. 1992).

18    The uncontroverted facts show that any actions the Defendant Officers may have

19  taken towards Plaintiff was committed in their official capacity as police officers.  The

20  Defendant Officers did not act in their individual capacity with an evil motive or intent,

21  recklessly or with callous indifference to the federally protected rights of Plaintiff.  The

22  Defendant Officers did not single out or seek to cause harm to Plaintiff.  Accordingly,

23  this is not the sort of conduct that calls for deterrence and punishment and therefore, an

24  award of punitive damages would be inappropriate.

25  ///

26  ///

27  ///

28  ///

## IV.   EVIDENTIARY ISSUES

Defendants have filed the following Motions in Limine:

1.     First Motion in Limine to Trifurcate Liability, Compensatory Damages/*Monell* and Punitive Damages;

2.     Second Motion in Limine to Exclude Evidence or References to the Defendant and Non-Defendant Officers' Personnel History and the Related Internal Investigation, and Other Lawsuits, and Scandals;

3.     Third Motion in Limine to Exclude Evidence of Whether the Defendant Officers' Actions Violated Police Policies and Practices;

4.     Fourth Motion in Limine to Preclude Lay Witnesses Offering Expert Witness Testimony at the Time of Trial;

5.     Fifth Motion in Limine to Exclude Witnesses, Photographs, Documents or Other Tangible Things Which Have Not Been Identified Pursuant to *F.R.Civ.R. 26*;

6.     Sixth Motion in Limine to Exclude References to and Evidence of Whether the Defendant Officers Played High School and College Sports;

7.     Seventh Motion in Limine to Exclude References to and Evidence of the Status of Plaintiff's Family Members as Law Enforcement Officers.

## V.   TRIFURCATION OF ISSUES

Defendants have filed a Motion in Limine which seeks an order trifurcating the trial as follows:   (1) determination of liability; (2) determination of compensatory damages and *Monell* liability; and (3) determination of punitive damages, if necessary. (See Defendants' Motion in Limine No. One.)

## VI.   JURY TRIAL AND ATTORNEY FEES

The parties have filed demands for a jury trial.   The prevailing party may be entitled to attorneys' fees under 42 U.S.C. Section 1988, in addition to costs.

///

21

**VII.   ABANDONMENT OF ISSUES**

Plaintiff has not dismissed any of his claims, although it is undisputed that Plaintiff admits that Officer Keifer did not use any force on him whatsoever.

**VIII.   OTHER MATTERS**

Defense counsel is currently scheduled to begin a jury trial in the Superior Court on January 18, 2011, wherein the time estimate is approximately five (5) days (excluding the jury's deliberation process).

**IX.   DEFENDANTS' WITNESS LIST:**

The parties joint witness list will be filed under separate cover.

**XI.   DEFENDANTS' EXHIBIT LIST:**

The parties joint exhibit list will be filed under separate cover.

DATED: December 20, 2010       **CARMEN A. TRUTANICH**, City Attorney
**GARY G. GEUSS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney


By_____/S/_____
         **SUREKHA A. PESSIS**, Deputy City Attorney

*Attorneys for Defendants,* **CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, JASON STANLEY, KEVIN HAWN, BRANDON KEIFER, and ANTHONY KELLER**